FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2019 JAN 10 AM 10: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| RICHARD MAXIMUS STRAHAN ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| DENISE BARTON ) | |
| ) | |
| DAVID SULLIVAN ) | |
| ) | |
| TYRONE PARHAM ) | 10 January 2019 |
| ) | |
| DAVID VAILLANCOURT ) | |
| ) | |
| ENKU GELAYE ) | |
| ) | |
| BRIAN GREEN ) | |
| ) | |
| KUMBLE SUBBASSWAMY ) | |
| ) | |
| *Defendants* ) | |

VERIFIED AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, DAMAGES, AND REQUEST FOR A JURY TRIAL

NOTICE: The Plaintiff is petitioning the Court pursuant to the "petition clause" of the First Amendment that protects the Public's rights — recognized in law since the signing of the *Magna Carta* — to petition the courts to redress wrongs and injuries being inflicted upon him in a repeated and recurring manner by the Defendants who are all government actors. The Petition Clause protection of the rights of the Public to petition the Court for relief is enforceable directly against the federal courts. The Petition Clause is supreme over any of the Court's internal "rules" implemented to govern its court's procedural requirements on the Public for petitioning it for redress of wrongs and injuries inflicted upon them by state actors. None of the Court's said procedural rules were implemented with any meaningful opportunity for the Public to comment on them or be part of the decision making process.

     1.     This is civil rights action against the Defendants who are all state actors. The Plaintiff is seeking injunctive relief to enjoin the Defendants from ongoing and recurrent malicious acts solely intended to stop the Plaintiff from:

     (a)     Engaging in core protected political speech in the Public forums on the University of Massachusetts campus in Amherst MA ("UMA").

 (b) The opportunity to obtain academic services he is lawfully entitled to receive as enjoyed by other members of the Public from UMA that the Defendants have unlawfully stopped UMA from providing him starting in 2013 and that continues to the present and into the foreseeable future.

 (c) Collecting signatures on the UMA campus from registered voters in Public spaces on his candidate papers for elected office and to place proposed laws on the Massachusetts election ballot to be voted on by the electorate ("Ballot Petitioning"). **FN1**

 (d) Enjoying the right to equal treatment under the law and his constitutional right of due process in obtaining academic services from a state university and otherwise to be accorded prior to being banned from entering onto UMA property.

 (e) Being safe from retaliatory trespass arrests on UMA campus and then criminal prosecution that are devoid of the requisite probable cause to justify such.

2. The Defendants are violating the Civil Rights Act and the Plaintiff's constitutionally protected rights by —

 (a) Seeking malicious criminal charges against the Plaintiff as unlawful retaliation against his petitioning courts for relief against their myriad unlawful acts inflicted on him by them. Example: The Defendants in 2015 filed malicious criminal charges against the Plaintiff based solely on the constitutionally protected text in his filings in lawsuits in which UMA employees are defendants that was dismissed by the criminal court.

 (b) Threatening him with unlawful trespass arrests on the UMA campus for the sole purpose of stopping him from engaging in core protected political speech and from Ballot Petitioning in UMA's Public areas.

 (c) Maliciously stopping him from receiving academic services from UMA, which he

---

[1] Articles 9 and 48 of the Massachusetts Constitution protects the right against interference by PRIVATE individuals to collect signatures from registered voters on candidate nomination papers of individuals seeking election to Public office. See *Batchelder v; Allied Stores International*, 388 Mass. 83, 445 N.E.2d 590 (Mass. 1983). In addition the US District Court of Massachusetts in *Strahan v. Frazier*, 156 F.Supp.2d 80 (D. Mass. 2001) relied upon the SJC's decision in *Batchelder* to rule that Article 48 of the Massachusetts Constitution similarly protects the right to collect signatures on initiative petitions seeking to place a proposed law on the state-wide election ballot for its approval by the electorate.

otherwise is fully entitled to receive under law for the sole purpose of retaliation against his bringing lawsuits against government employees, petitioning the UMA administration to implement/revoke policies, and to stop him from engaging in core protected political speech on the UMA campus and to its community.

(d) By enforcing a government conduct code in an unconstitutional manner as applied to him — in violation of his constitutional rights of due process and equal treatment under the law — for the sole purpose of stopping him from receiving academic services that he is lawfully entitled to receive from a state university.

3. The Plaintiff is also seeking an award of compensatory and punitive damages against each of these Defendants for each of their repeated and recurring tortious injuries against the Plaintiff that started in 2010 and commences to the current day. These Defendants interfered with his contract with UMA, caused the Plaintiff to lose $100,000 in payments to UMA without receiving his contracted for BS Physics Degree, maliciously had the UMA terminate its academic services to the Plaintiff in the past and at the current time. They also subjected him to false arrest and malicious prosecution on criminal charges dismissed by the state court in his favor.

4. In 2009 Plaintiff entered into a binding contract with the University of Massachusetts in Amherst MS ("UMA") to supply him a Bachelor of Science Degree in Physics ("BS Physics Degree") by June 2013. This contract was affirmed IN WRITING, with signatures by both UMA officials and the Plaintiff in both 2013 and then again in 2015. The 2015 contract revisions assured the Plaintiff of a BS Physics Degree by June 2016. But the Defendants acted in concert in a continuous and recurrent manner from 2009 – 2016 as individuals outside any lawful state authority to maliciously interfere with the said contract and stopped the Plaintiff from receiving his contracted for BS Physics Degree from UMA.

## Jurisdiction and Standing

6. The federal Civil Rights Act gives the Court jurisdiction to hear the Plaintiff's claims that the Defendants violated the Plaintiff's constitutional rights. This includes the Plaintiff's claims that the Defendants violated his 1st Amendment protected rights to Free Speech and to Petition the Courts; the 4th Amendment right to be free from unlawful seizure; and the 14th Amendment guarantees his right to due process and equal treatment under the law. The Defendants are all state actors who acted under color of state law to deprive the Plaintiff of his said constitutional right. to be protected in his property and person from seizure without a

warrant. The Court has jurisdiction to hear the Plaintiff's petition pursuant to the Civil Rights Act and other federal law. **FN2** The **Federal Declaratory Judgment Act** provides the Plaintiff the lawful right to seek a declaratory judgment from the Court to establish that rights and duties between the parties and in regards to the issues before the Court. **FN3**

7. Massachusetts' **statute** provides **jurisdiction** to the Court to hear Plaintiff's claims against the Defendants' for their unlawful violation of his privacy and to seek injunctive relief to stop them from reoccurring in the future. **FN4**

8. The Plaintiff has standing under Article III of the Constitution to bring the instant action. The Plaintiff has suffered substantive monetary loss and irreparable injury to his business interests as a result of the harassment and arrest by the Defendants. He is suffering daily renewing irreparable harm by the Defendants from their continuing threats against his reputation and threats to arrest him if he enters the UMA campus to do business there. The Plaintiff is suffering much loss of income and advantageous business relationships from the alleged violations of law by the Defendants.

## The Parties

9. Plaintiff Richard Max Strahan recently graduated *magnum cum laude* from the University of Massachusetts in Boston MA. He is a conservation scientist and a classics scholar. He is the Chief Science Officer of Calm Earth LLC, a scientific campaign to protect biological diversity of sepcies of Plaint and Animal Life on the Earth. He is a leading nationally recognized expert in the conservation and protection of endangered wildlife. His business address is POB 382408, Cambridge MA 02238.

10. Defendant Brian Green is being sued in her individual capacity. Her business address is % Office of the Chancellor, Whitmore Administration Building, Room 374, University of Massachusetts, Amherst MA 01003.

11. Denise Barton is being sued in his individual capacity. His business address is % Office of the Chancellor, Whitmore Administration Building, Room 374, University of

---

[2] Civil Rights Act 42 USC § 1983

[3] Declaratory Judgment Act, 28 U.S.C.S. § 2201

[4] Ch. 214 § 1B: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

Massachusetts, Amherst MA 01003.

12. Enku Gelaye is being sued in his individual capacity. His business address is % Office of the Chancellor, Whitmore Administration Building, Room 374, University of Massachusetts, Amherst MA 01003.

13. Defendant Tyrone Parham is being sued individually and also in his official capacity as the supervisor of the individuals employed as deputized security guards by UMA. He is also being sued in his personal capacity for acting outside his lawful authority to act in concert with the other Defendants to stop the Plaintiff from enjoying his constitutionally and otherwise lawfully protected right to do Ballot Petitioning and Political Speech by using threats of the Plaintiff being arrested for criminal trespass without any probable cause to do so. He is being sued in his official capacity to be permanently enjoined from him and his agents threatening the Plaintiff with arrest without probable cause on the UMA campus in order to interfere with the Plaintiff enjoying his constitutionally protected activities. His official business address is % Office of the Chancellor, Whitmore Administration Building, Room 374, University of Massachusetts, Amherst MA 01003.

14. Defendant Kumble Subbaswamy is being sued as an individual and also in his official capacity as the acting chief executive administrator at the UMA. The Plaintiff is seeking a permanent injunction against him to stop UMA from cooperating with the other Defendants said malicious and unlawful attempts to injure him. His official business address is % Office of the Chancellor, Whitmore Administration Building, Room 374, University of Massachusetts, Amherst MA 01003.

15. Defendant David Sullivan is being sued as a private individual and in his official capacity as the executive administrator of the Massachusetts Office of Northwest District Attorney. His official business address is % of the Office of the Northwest District Attorney, One Gleason Plaza, Northampton, MA 01060.

### Incomplete Background

16. The Defendants acting in concert and as a whole since 2010 to the present day, are deliberately creating a hostile and violence based environment for Strahan on the UMA campus to stop him from ever again obtaining any academic services from UMA and being on the UMA campus in the future. For example the Plaintiff despite being equally entitled under law and as fact to receive academic services from UMA, can no longer obtain any academic services

from UMA just because these Defendants do not personally want him anywhere near the UMA campus. To put it too simply, the Defendants outside of just hating him personally see him as a threat to their personal vested interests in the UMA community. Example, they now recognize that they are liable to held accountable in courts or even fired for their deliberate and continuing mistreatment of the Plaintiff. So they consider simply stone walling to stop the Plaintiff from ever even taking a course at UMA or being on the UMA campus for any reason as a good defense in a court of law or Public opinion.

17. The reality that the history of the attacks against him by the Defendants is so long and repeated that they cannot be fully presented in this complaint. The Plaintiff fully intends to supplement his pleadings in the near future with a declaration detaining the Defendants and their allies' attacks on him over the last decade which will include attached exhibits. However the Plaintiff is now presenting example(s) of the unlawful attacks on him by each of the Defendants to illustrate to the Court the basis of his claims for relief against the Defendants in his instant petition to the Court. His prospective declaration will provide many more.

18. In 2010, the Plaintiff filed a request for copies of Public records with Defendant Vaillancourt that were in his official possession as a UMA employee. During a phone with the Plaintiff he told the Plaintiff that he refused to comply with the Plaintiff's public record request. The Plaintiff then told this Defendant that he was going to file a written complaint against him with the state to compel his production of the sought for public documents. In response, Vaillaincourt "googled" the Plaintiff's litigation history, became fearful of becoming a defendant in lawsuit by the Plaintiff and being punished by UMA as a result. He then filed a criminal complaint against the Plaintiff with UMA security claiming that the Plaintiff had "threatened" him. He brought charges against the Plaintiff for violating the UMA conduct code for threatening him with a lawsuit. He got his friends at UMA to suspend the Plaintiff as a student for a year simply for making "threats to bring a lawsuit" against UMA employees. UMA has officially ruled that students cannot threaten any UMA employee with legal action.

19. In 2011 the Plaintiff petitioned the Court to order UMA to immediately readmit him as a student so his academic progress would not be interrupted. The Court ignored his request for a preliminary injunction, never held any hearing in that action, and dismissed it for all the wrong reasons a year later.

20. In January 2012, the Plaintiff met with Defendant Gelaye — a UMA lawyer — at her office after his suspension ended. She told him that she considered him a criminal and that he

should not be allowed to get any degree at UMA. She told him that she was going to expel him from UMA for whatever reasons that she could fabricate to expel him. She threatened to make his tenure as a student as miserable as possible and to encourage UMA employees to file complaints against him so she could expel him as soon as possible. She mentioned his said federal lawsuits against UMA, and told him that she considered him a personal threat to her and other UMA employees. She said that she would expel him immediately but she was intimidated by his practice of bring lawsuits against government employees.

21. In March 2013, Defendant Gelaye personally told the Plaintiff that she threatened to expel the Plaintiff for making complaints against UMA employees. The Plaintiff immediately sued her in state court to enjoin her from making good on her said threat. After he served her with the summons, he met with her and she told him that she was immediately expelling him for suing her. She said that she was expelling him in the middle of the semester so that his student aid would be cancelled and the Plaintiff would wind up owing UMA thousands of dollars in unpaid tuition to UMA. She knew that the Plaintiff was indigent, could never pay UMA its demand for unpaid tuition, and therefore she could keep him from never returning to UMA as a student. Defendant Gelaye then in April 2013 made good her threat permanently suspended the Plaintiff from UMA without any authority to do so pursuant to her duties as a UMA employee. She did so simply out of a personal enmity towards him and — in part — for suing her in state court. As a bonus, she then tracked him down on the UMA campus with UMA security in tow. She screamed at him that he was expelled. She personally trespassed him off the campus and ordered the UMA security employees to physically put in him in custody and drive him several miles off the campus to be then released on the side of the road.

22. Defendant Barton acted in concert with Gelaye to expel the Plaintiff and to order him trespassed off the UMA campus to prevent him collecting evidence, obtaining witnesses, and otherwise prevent him from successfully prosecuting his claims against the UMA defendants in his said state lawsuit. Strahan was told that the trespass threat against him would be enforced by her and Gelaye until April 2015. She also ordered the Plaintiff's being expelled in the middle of the semester so as to cause him to be billed about $4000 by UMA in unpaid tuition as a means to stop him from being able to reapply for admission to obtain his sought for BS Physics Degree.

23. Despite the attacks of these Defendants, the Plaintiff accumulated needed course credits for graduation and made academic progress towards graduation. He maintained a Grade

Point Average that was over 3.0, well in excess of the minimum requirements of UMA. The Plaintiff developed excellent relationships with his course instructor and fellow classmates.

24. In February 2015, the Plaintiff met with the chair of the UMA Physics Department and the Dean of the College of Natural Sciences to map out the courses he would take when readmitted to UMA for him to successfully complete the requirements for him to be awarded his sought for BS Physics Degree. At that time he signed a written contract with these two senior UMA officials. This contract was an extension of the contract he entered into with UMA in 2009 for his obtaining a BS Physics Degree by June 2016. The new contract ("2015 UMA Contract") that was signed by Strahan and the said two UMA senior officials, provided that the Plaintiff would obtain a BS Physics Degree by June 2016 if he took certain courses and got certain minimum grades in each of these required courses. The 2015 UMA Courses was the ultimate terms of his contract with UMA for obtaining a BS Physics Degree. It explicitly did not require that he comply with any UMA conduct code and did not allow any interference with his academic progress pursuant to any past or future enforcement of the UMA conduct code.

25. In April 2015, the Defendants ordered trespass threat against him was no longer enforced by the UMA security office, which considered it as now unjustifiable. The Plaintiff applied for readmission to UMA pursuant to the 2015 UMA Contract. Defendants Gelaye and Barton intervened and unlawfully usurped their authority as UMA employees to stop the Plaintiff from enforcing the 2015 UMA Contract. They repeatedly made false threats and accusations against the Plaintiff. They and Vallaincourt maliciously acted to keep the Plaintiff from visiting administrative UMA offices to facilitate his readmission to the UMA. They repeatedly tried to get the UMA security to arrest the Plaintiff when they witnessed him on the UMA campus acting in a peaceful manner to conduct official business with UMA pursuant to his readmission.

26. These Defendants maliciously stopped UMA from readmitting the Plaintiff for the Fall 2015 Semester. They maliciously interfered with UMA complying with its 2015 UMA Contract with the Plaintiff. As a result UMA breeched the 2013 UMA Contract by refusing to readmit the Plaintiff owing to the harassment and threats of these Defendants towards other UMA employees responsible for authorizing his readmission to UMA.

27. Once again the Plaintiff in 2015 commenced a lawsuit against UMA employees to obtain an order enforcing the 2015 UMA Contract and to obtain an order to compel his readmission to UMA for the Fall 2015 semester. In retaliation, in August 2015 Defendants Gelaye, Vaillancourt, and Barton brought criminal charges against the Plaintiff based solely on

some text included in his memo to the state court in support of his requested injunctive relief against UMA defendants. These Defendants maliciously claimed that this text was a veiled threat by the Plaintiff of an intent to murder all kinds of people on the UMA campus. They made this malicious and ridiculous claim despite the fact that the said text on its face mentioned nobodies name and made no such threat to anyone. These Defendants brought these malicious criminal charges against the Plaintiff in retaliation for his peaceful efforts to be readmitted to UMA: (1) To thwart those efforts and to (2) Stop him from prosecuting his claims in the new lawsuit in order to gain readmission to UMA.

28. On 30 August 2015, these Plaintiffs used their malicious criminal charges against the Plaintiff to order UMA security to again threaten the Plaintiff with criminal trespass arrest if he entered upon the UMA campus in the next two years. Later, these Defendants filed criminal charges against the Plaintiff in the East Hampshire District Court.

29. In June 2017, the Defendants criminal charges were rejected and dismissed by the clerk's office of the EHDC. These Defendants sought no appeal of that dismissal. In September 2017, the UMA Security withdrew its trespass arrest threats against the Plaintiff as no longer justifiable.

30. The Plaintiff has horrifically suffered at the dirty hands of these defendants. In 2009 he contracted with UMA to obtain a BS Physics Degree so he could go on to graduate school to get a PhD in Physics. He wanted to get a PhD in Physics in order to hac=ve the recognized expertise to effectively advocate for the effective protection of endangered species of wildlife and other Pubic Interest achievements. Instead he is now $100,000 in student loan debt. Worst, he has used up his 10 semester eligibility for student aid as an undergraduate. So eight years after enrolling at UMA he has no BS Physics Degree and without any realistic hope of having the money to pay for one. He is $100,000 in debt without the BS degree to get a good job to pay off this debt. He also is permanently banned from taking even a single adult education course at any UMass campus. All this misery has been inflicted on him by these Defendants and and without him doing any harn to them or anyone else. The Defendants have acted out of personal bigotry and hatred for the Plaintiff just because in his protecting wildlife and protecting his right to Free Speech in public he has ben compelled to bring lawsuits to protect his right to do so from being unlawfully impaired by disgruntled government workers.

**Plaintiff's Claims Against the Defendants**

COUNT I:    *The Defendants Violation of the 1ˢᵗ Amendment and the Civil Rights Act*

31.    The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 20.

32.    Starting in 2009 and repeated continuously to the current day, UMA employees including Defendants Gelaye, Barton, Parham, Subasswamy, and Vailancourt are acting in concert and under color of state law to deliberately violate the 1ˢᵗ Amendment protected rights of the Plaintiff and the CRA in furtherance to succeed in their strategy to permanently expel the Plaintiff from UMA, to stop him from getting his contracted for BS Physics Degree and to permanently trespass him from the UMA campus. Once again these Defendants personally despise the Plaintiff and are prejudiced against him as a political activist, adult member of the working class, and a known litigator of disgruntled government employees. They consider him as such as a personal threat to their vested interests as employees of UMA.

33.    Since 2010 these Defendants are deliberately interfering with the enjoyment of his First Amendment protected rights to: (1) Engage in core political speech in the Public fora on the UMA campus; and (2) Bring lawsuits in state and federal courts against UMA and its employees. Between April 2009 and April 2013 the Plaintiff could freely visit the UMA campus as a member of the Public and as a degree-seeking candidate at UMA. He did so thousands of times without incident. Between 2000 through April, 2013 the Plaintiff was neither convicted nor ever accused of violating any federal, state and/or municipal law on the UMA campus. For every one of these thousands of visits, the Plaintiff conducted himself in a peaceful, professional and thoughtful manner to all other member visitor/students.

34.    Starting in 2010, these Defendants said harassment and attacks against the Plaintiff began when Defendant Vaillancourt had him suspended from UMA for simply appealing its refusal to comply with the Public record request he made to it. They continued against the Plaintiff after he was readmitted to UMA in January 2012. They continue repeatedly to the current day,

35.    In April 2013, Defendants Gelyae, Barton and Vaillancourt again unlawfully expelled the Plaintiff as a student from UMA. Once again their sole motivation from 2010 to the present is simply to advance their strategy and intent to permanently expel Strahan to as a student at UMA, stop him from obtaining his contracted for BS Physics Degree and get him banned permanently from coming onto the UMA campus. This time they were retaliating against two lawsuits naming Gelaye, Vaillancourt and other UMA employees as defendants that was

commenced by Strahan in the Hampshire Superior Court between March and April in 2013. **FN5** He filed these lawsuits after a further series of attacks on him by these Defendants that were ruining his ability to succeed in his coursework. After the Plaintiff commenced these lawsuits, these Defendants directly told Strahan that in retaliation for these lawsuits they were going to get him kicked out of UMA again and this time banned from ever coming onto campus again. These Defendants repeatedly claimed to him and others that they consider him as a political threat to their personal vested interests on the UMA campus simply from his peacefully challenging their conduct as government employees.

36.    In April 2013 these Defendants in concert made good their said threats to the Plaintiff and maliciously induced UMA to expel the Plaintiff from his status as a degree candidate on the UMA campus. Defendants Gelaye, Barton and Vaillancourt at the same time directly threatened the Plaintiff with trespass arrest **FN6** if entered upon UMA property ant any time over the next two years ("2013 Trespass Threat"). Upon information and belief these Defendants have no lawful authority as a UMA employees to restrict anyone from entering upon UMA property — nor must anyone seek their permission to be on the UMA campus.

37.    The University of Massachusetts as a government agency has adopted an administrative policy that establishes Public spaces on all its campuses including on the UMA campus. UMA authorizes all members of the Public to freely enter upon these Public spaces on the UMA campus at any hour of the day or night without needing to get any permission to do so.

38.    As part of their said above schemes against the Plaintiff, the Defendants maliciously claimed that were doing so because the Plaintiff violated the "UMA Conduct Code" for students. The Plaintiff did not violate the UMA Conduct Code. More importantly, most provisions of the UMA Conduct Code are facially unconstitutional and additionally unconstitutional as enforced against the Plaintiff. Example, the UMA Conduct Code is so enforced that bringing lawsuits against UMA employees is considered a prohibited threat and

---

⁵ *Strahan v. Gelaye, Vailancourt et al.*, 13 - CV- 0050 (Hampshire Superior Court 2013

⁶ **Massachusetts Criminal Trespass Statute**, GL Ch. 266 § 120: "Section 120. Whoever, WITHOUT RIGHT [emphasis added] enters or remains … in or upon … buildings … or improved or enclosed land … of another … after having been forbidden so to do by the person who HAS LAWFUL CONTROL of said premises … shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment."

harassment. Once again, these Defendants sole reason for seeking to expel Strahan was in retaliation for both his bringing lawsuits against UMA employees and his core political speech challenging their actions as UMA employees.

39. The Plaintiff was arrested in October 2013 on the UMA campus by Defendant Green to stop him from peacefully Ballot Petitioning in a Public forum on the UMA campus. Later the East Hampshire District Court dismissed the criminal charge upon the requestr of the district attorney for being devoid of any probable cause to legally justify the arrest.

40. Under Article 48 of the Massachusetts Constitution the Public has more than a right to do Ballot Petitioning on private property frequented by the Public. The Public by Article 48 is AUTHORIZED to do Ballot Petitioning on private property. **FN7** Ballot Petitioning is recognized by the MTS as a right to be on private property frequented by the Public like the UMA campus. So even if there is a person had been trespassed on property for having no right otherwise to be on the property, he can subsequently enter the property lawfully since Ballot Petitioning gives him a right to be on that property under the MTS.

41. After 15 April 2015 when the 2013 Trespass Arrest was vacated by UMA security as unjustified, the Plaintiff visited the UMA campus many times without incident. He mostly visited the campus to conduct the business to achieve reenrollment as a BS Physics Candidate for the Fall 2015 semester. In July 2015, the Plaintiff sent an email to Defendants Gelaye and Barton informing them that he was now organizing the Professional Students Association on the UMA campus. He informed them that the PSA was seeking to have the UMA Conduct Code revoked. And that they were asking UMA to sanction them for their lawless and criminal acts against the Plaintiff other UMA students by having their employment terminated.

42. At some point in late August 2015 Gelaye, Vaillncourt, and Barton again retaliated against the Plaintiff to kick him off the UMA campus inspired by his announcement of organizing for the PSA on the UMA campus. These Defendants issued another threat to arrest him for trespass under the MTS if he entered on the UMA campus for another two years ("2015 Trespass Threat"). This time their malicious excuse was that text contained in one of his court filings in a lawsuit against UMA employees constituted a threat to commit murder. The 2015

---

[7] *Glovsky v. Roche Brothers Supermarkest, Inc*, 469 Mass 752 (2014); *Batchelder v. Allied Stores International*, 388 Mass. 83, 445 N.E.2d 590) (Mass. 1983)

Trespass Threat is an unlawful retaliation by these Plaintiffs against the Plaintiff's 1ˢᵗ Amendment right to file the Lawsuit Text with the Hampshire Superior court and serves also as protected core political speech.

43.   These Defendants told the Plaintiff directly, in E-mails, and to others their purpose in ordering the 2015 Trespass Threat. It was to stop the Plaintiff from coming on campus to prevent him him from both: (1) Collecting evidence and documenting further claims against these Defendants in the lawsuit that the Plaintiffs had commenced against them in the Hampshire Superior Court; **FN8** (2) Organizing for the Professional Students Association on the UMA campus which they see as a direct threat to their personal and commercial vested interests at UMA; and, (3) Just stop him from being on campus out of their personal enmity towards him, as being a generic threat to bring more lawsuits against them and their friends, and as a bad influence on other students so they too would oppose these Defendants antics and bring their own lawsuits against UMA employees.

44.   The Massachusetts criminal trespass statute ("MTS") ONLY allows property owners, or an employee given by an owner ultimate authority over a property, to have any authority under this act to authorize a trespass arrest of someone previously forbidden by the owner to enter upon property. **FN9** Upon information and belief, neither the Defendants nor the said security supervisor have any authority as UMA employees to stop a member of the Public's future access to the UMA campus. Possibly Defendant Subasswamy as UMA's Chancellor might have such official authority.

45.   Additionally, the Court ruled that the MTS recognizes that the Public may have the right or authority to be on state property as a matter of law, contract, or authority outside of ownership (*e. g.* Public right of way, authority to do Ballot Petitioning, Public Library, paying tuition to a state school, employment status). State courts have ruled that the Public has an authority under the Massachusetts Constitution to Ballot Petition on private property frequented by the Public. FN10 Therefore the MCTS cannot be used by commercial property owners to stop the Public from Ballot Petitioning in a shopping mall — even if the Public otherwise could be

---

[8] See *Strahan v. Lenz et al,* 1580-CV-00114 (Hampshire Superior Court)

[9] *Supra* at n. 6.

[10] *Glovsky v. Roche Brothers Supermarkest, Inc,* 469 Mass 752 (2014); *Batchelder v. Allied Stores International,* 388 Mass. 83, 445 N.E.2d 590) (Mass. 1983)

banned from the property for any other reason. **FN11**

46. The Court has previously ruled that the MTS recognizes the constitutional rights of the Public when they are on Public areas of state property. FN12 This means that the Public cannot be "trespassed" from the reception areas of state office buildings simply because state employees consider their speech, rude, obnoxious or smelly. It is also not possible under federal law to trespass anyone *permanently* from a state or federal courthouse including obnoxious *pro se* plaintiffs. FN13

47. These Defendants are also currently violating the Plaintiff's ability to enjoy his right to petition Massachusetts state courts that is protected by the "Petition Clause" of the 1st Amendment, The Defendants acting under the color of state law have further maliciously retaliated under color of state law against the Plaintiff's right to petition the courts in violation of the CRA. The Plaintiff has historically petitioned the Massachusetts Superior Court to enforce his contractual rights against UMA and to award him damages against most of the Defendants.

48. On 16 June 2017 a show cause hearing took place at the EHDC on the Defendants application for a criminal complaint against the Plaintiff. The EHDC refused to issue the Defendants sought for criminal complaint because there was no basis in law for it to do so. At that hearing the UMA security representative testified under oath that he had no basis in fact to believe that the Plaintiff ever threatened to injure anyone in violation of state law.

49. Under the current threat of retribution with more malicious criminal charges, the Plaintiff can no longer petition the state courts for protection from the Defendants and relief for their ongoing and recurrent irreparable injuring of his enjoyment of his constitutionally protected rights. Every time he made a future filing in that court, it would provide a clear and present danger to be the basis of a knowingly false of criminal activity by the Defendants against him in retaliation for bringing his lawsuits against them.

50. Recently, the Plaintiff was coerced by these said ongoing and recurring unlawful threats of retaliation against him by the Defendants to voluntarily dismiss one of his state lawsuits against the Defendants. **FN14** His dismissal occurred after the said state court refused

---

[11] *Strahan v, Frazier*, 156 F.Supp.2d 80 (D. Mass 2001)

[12] *Hurley v. Hinckley*, 304 F.Supp. 704 (1969)

[13] *Huminski v. Corsones*, 396 F.3d 53 (2004)

[14] See *Strahan v. Subbaswamy, et al.*, 16-CV-0086 (Hampshire Superior Court)

his repeated request to stop the Defendants from bringing criminal charges against the Plaintiff wholly based on his court filings in the said state lawsuit without first obtaining the permission of the state court. That state court's refusal to act to protect the Plaintiff is equivalent to that state court declaring "open season' on the Defendants further repeated injuring the Plaintiff in the future pursuant to their said ongoing invidious and malicious intents against the Plaintiff.

51. The Defendant Sullivan has lobbied the Regional Administrative Judge for the EHDC to overrule that court's prior rejection of the Defendants application for criminal charges against the Plaintiff. The Defendant Sullivan has refused to consider the Plaintiff's written petitions to it to protect him from the unlawful actions of the Defendants. He has refused to stop prosecuting the Plaintiff to enforce the other Defendants malicious and unlawful said trespass arrests of his person. There is no lawful basis for Sullivan to prosecute the Plaintiff for trespass on the UMA campus for his Ballot petitioning and peace political campaigning thee. He personally told the Plaintiff to "go to Hell." He unlawfully banned the Plaintiff from entering the NWDA office in the future with a threat of retaliatory trespass arrest just to stop him from petitioning the NWDA office in the future and communicating with its staff.

52. These said several trespass threats by all the Defendants against the Plaintiff are also being made in retaliations for the Plaintiff's ongoing video recording of the Defendants and the activities in the Public space of the UMA and the NWDA office. The 1st Circuit has ruled that the Plaintiff's video recording of the Defendants is protected speech under the 1st Amendment of the Constitution.

53. The Plaintiff is seeking permanent and interlocutory injunctive relief against the Defendants to enjoin their arresting the Plaintiff for criminal trespass if he enters upon the UMA campus in the future or similarly enters the offices of the Northwest District Attorney to conduct official business and to conduct petitioning activity in the future in the Public areas of these government properties. The Plaintiff is also seeking to enjoin the Defendants from unlawfully interfering with his peacefully video recording them in Public while they are conducting their official employee business.

54. Currently Defendants Subasswamy and Parham are allowing and aiding and abetting the other Defendants in their unlawful attacks on the Plaintiff. They also possess the supervisory authority to stop UMA and its employees from supporting and complying with Defendants , Gelaye, Barton, and Vaillancourt 's said efforts to harm the Plaintiff. The Plaintiff is seeking a permanent injunction against Defendants Subbaswamy and Parham in their official

capacity to put an end to UMA's compliance Defendants Gelaye, Barton, and Vaillancourt said efforts to unlawfully injure him. If the Court does not grant the Plaintiff's requested injunctive relief against Defendants Subasswamy and Parham, the other Defendants will repeated their unlawful violation of his constitutionally protected rights to petition the government, to conduct core political speech in Public fora, and to video record police and government employees performing their duties in Public.

COUNT II:   *The Defendants Violation of the 4th Amendment and the Civil Rights Act by Defendants Green, Gelaye, Barton, and Vaillancourt.*

55.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 54.

56.   On 26 September 2013, the Plaintiff was unlawfully arrested for trespassing while peacefully Ballot Petitioning in a Public forum on the UMA campus. In 2015, the East Hampshire District Court later dismissed the criminal trespass charge upon request of the district attorney for lack of any requisite probable cause to justify a conviction. Article 48 of the Massachusetts Constitution provides an authority to the Public to Ballot petition on private property frequented by the Public. Since Massachusetts' law provides a right to Ballot Petition on UMA campus that is recognized under the Massachusetts Trespass Statute, the arrest violated the Plaintiff's 4th Amendment right to be free of unlawful seizure. The Defendants malicious prosecution that accrued in May 2015 when the charges were dismissed by the EHDC also violates the 4th Amendment. Since the arrest and prosecution were part of a continuing violation, the statute of limitations does not apply to the 2013 arrest. **FN15**

57.   The 2013 Trespass Arrest was unlawful as an act to stop 1st Amendment protected activities. Upon information and belief, the Plaintiff false arrest by Defendant Green on 26 September 2013 was done under the explicit orders of Defendants, Gelaye, Barton, and Vaillancourt. These Defendants were all personally aware that the Plaintiff's arrest was devoid of the requisite probable cause to lawfully justify it. In addition the arrest was in retaliation against the Plaintiff's constitutionally protected rights to engage in political speech on the UMA campus and for bringing lawsuits against the Defendants. These Defendants are personally liable for the said false arrest malicious prosecution of the Plaintiff.

COUNT III:   *Violation of 4th Amendment and the CRA for Malicious Prosecution of the Plaintiff*

---

[15] *Strahan v, Frazier*, 156 F.Supp.2d 80 (D. Mass 2001)

Case 1:19-cv-10054-WGY   Document 1   Filed 01/10/19   Page 17 of 19

10 January 2019 Complaint in *Strahan v. Parham, et al.*,                                                              17

*by Defendants Gelaye, Barton and Vaillancourt on criminal charges*

58.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 43.

59.   In October 2015 the named Defendants maliciously requested to the East Hampshire District Court that criminal charges be brought against me for threatening to murder everyone at UMA. In June 2016, the EHDC rejected the said Defendants request for a criminal complaint against me as being without any basis in law and/or fact and without the requisite probable cause to justify its issuance.

60.   The Defendants are state actors and above malicious prosecution by them violated my 4$^a$ Amendment protected right form illegal seizure and the Civil Rights Act.

**Supplemental Jurisdiction Claims**

COUNT IV:   *Libel and Slander of the Plaintiff by the Defendants* (Barton, Gelaye, Parham)

61.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 60

62.   From 2011 through to the present, the Defendants Geleaye, Vaillancourt and Barton are repeatedly making knowingly and maliciously false statements both verbally and in writing about the Plaintiff to other members of the UMA community. They repeatedly have told members of the UMA community that the Plaintiff was a criminal, insane, dangerous, posed a threat to them and the UMA community in general, and also was a penniless homeless bum who only attend UMA as a student to live off the financial aid that he received as an indigent person.

63.   The malicious complaints that they officially brought against the Plaintiff are now part of his academic record at UMA and have maliciously contaminated his academic record to make it useless for any purpose of advancing his academic career in the future The Plaintiff is $100,000 in debt to financial aid funds paid to UMA and his academic record at UMA is corrupted and useless as a result of the these Defendants said malicious and lawless acts against him.

COUNT V:   *Malicious Interference in Contractual Relationship between the Plaintiff and UMA by Defendants Barton, Gelaye, and Vailaincourt*

64.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 63

65.   From 2010 – 2017 these Defendants have deliberately and maliciously acted to destroy the contractual relationship between the Plaintiff and UMA. As a result, the Plaintiff has paid to UMA almost $100,000.00 in funds in order to obtain a BS Physics Degree. He has faithfully complied with all his obligations under his 2009 UMA Contract as modified by his

2015 UMA Contract. While these Defendants are UMA employees, they acted wholly outside their UMA employment authority and acted as private persons out of their personal enmity towards the Plaintiff to destroy the Plaintiff's contractual relationship with UMA.

## PRAYER FOR RELIEF

I. For a declaratory judgment that the Public has a constitutionally protected right to engage in First Amendment core political speech and campaigning for election to government offices in Public areas on the UMA campus AND also have a constitutionally protected right under Articles 9 and 48 of the Massachusetts Constitution and the First Amendment to collect signatures of registered voters on petitions seeking access to the ballot in public places on the UMA campus.

II. For a declaratory judgment that the Plaintiff is entitled as a matter of law to apply for and receive academic services from UMA as any other member of the Public so situated as not having done any business with UMA in the past, and also is entitled to enforce his 2015 UMA Contract over a single academic year at no cost to the Plaintiff.

III. For an order enjoining Defendants Parham, Subasswamy and Sullivan from making without the Court's written permission any trespass threats against the Plaintiff from entering upon the UMA campus or the NWDA office and from filing any criminal complaints/prosecutions against the Plaintiff based wholly on his court filings in lawsuits he is bringing against the Defendants including the instant action.

IV. For an order enjoining the Defendants from continuing attempting to stop the plaintiff from entering the property of the government offices that employ them, video recording them performing their official duties, and further interfering with his seeking academic services from UMA.

V. For an award of $100,000 in compensatory damages from each of the Defendants.

VI. For an award of $1,000,000 in punitive damages from each of the Defendants.

VII. For an award of the Plaintiff's direct costs in prosecuting of the Defendants.

VIII. For any further relief that the Court deems appropriate.

BY:

/s/ Richard Maximus Strahan
_____
Richard Maximus Strahan
esistoo@yahoo.com
617.817.4402

*Pro Se and Proud!*

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 10th the day of January in the year 2019.

/s/ Richard Maximus Strahan
_____